UNITED STATE COURT OF APPEALS
FOR THE SECOND CIRCUIT

|  |  |  |
|---|---|---|
| SAINT REGIS MOHAWK TRIBE, | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | |
| ANDREW M. CUOMO, GOVERNOR OF NEW YORK | ) | Case No 13-3406 |
| and | ) | |
| COUNTY OF FRANKLIN, NEW YORK, | ) | |
| Defendants-Appellees. | ) | |

**Joint Motion to Reinstate Appeal for the Limited Purpose
of Allowing the Appellant to Move to Withdraw the Appeal
<u>Without Prejudice</u> <u>Pending Settlement Negotiations</u>**

1.  The Appellant Saint Regis Mohawk Tribe and Appellees, the State of New York and the County of Franklin, hereby move this Court to reinstate this appeal for the limited purpose of considering the Appellant's request to withdraw the appeal without prejudice subject to subsequent reinstatement upon specific conditions. The parties make this joint motion based on consultations with the Clerk of the Court, to allow the Court to effectively manage this case while the parties pursue ongoing settlement negotiations. As part of this filing, the Appellant hereby requests the appeal be withdrawn without prejudice to reinstatement based on the terms herein.

1

2. This appeal involves complicated matters between a number of governmental and institutional parties. The parties remain in active settlement negotiations and have a framework as to how a settlement of this complicated matter must proceed.

3. This appeal is one of two parallel cases that concern the Saint Regis Mohawk Tribe's federal reservation in Northern New York  First, the Tribe has a Land Claim pending in the Northern District of New York.  This case, *Canadian St. Regis Band of Mohawk Indians v. State of New York,* et al., 82-CV-783, 82-CV-114, 89-CV-829, has been in on-again, off-again settlement negotiations throughout the years. This case is colloquially known as the "Land Claim."

4. The second case is this appeal, which arises from a case filed by the Tribe in 2009 seeking a declaratory judgment on the existence of its reservation boundary as defined by federal treaty.  This case is colloquially known as the "Boundary Claim."

5. In 2013, the Tribe and the State agreed in a written memorandum of understanding ("MOU") to resuscitate the then-dormant settlement negotiations in the Land Claim.  The parties resolved to include the Boundary Claim in the negotiations as well, with the goal to resolve both cases in a single settlement agreement. This choice reflects the parties' understanding that the overlapping issues in both cases must be addressed simultaneously for a truly final resolution to

be reached. Thus, in March 2014, before this appeal was fully briefed and set for argument, the Tribe filed a stipulation, pursuant to Local Rule 42.1, to withdraw this appeal without prejudice to reinstatement pending settlement negotiations. As is described below, the stipulation of withdrawal has been in place since that time, with the parties participating in periodic CAMP mediation calls to report on the status of the negotiations. The stipulations were extended based on the progress reported.

6. During that time, the parties have been actively pursuing a comprehensive settlement. But working out the settlement is complicated because it involves many stakeholders and the status of land ownership and jurisdiction in Franklin and Saint Lawrence Counties—issues that impact governments as well as ordinary citizens. To permanently resolve both cases, several steps will need to be taken.

7. In 2014, the State, the Tribe, Saint Lawrence County, and the New York Power Authority (a defendant in the Land Claim, but not the Boundary Claim) entered into a MOU, setting forth settlement parameters. Currently, the State and the Tribe are working on a second MOU with Franklin County, an additional county affected by the Tribe's claims and a party to this appeal.

8. Once the parties finalize the second MOU, the next step will be for the State negotiators to seek to introduce a bill in the New York State Legislature that

will delegate to the Governor the authority to finalize a settlement that embodies the framework and terms of settlement MOUs.

9. Once the state-level legislation is enacted, the State, the Tribe, NYPA, and the Counties will finalize a settlement agreement. At that time, the Tribe expects that the other two tribal parties in the Land Claim case will agree to join the settlement.

10. Because the United States is a party to the Land Claim, the settlement agreement will also require approval from the U.S. Department of the Interior and the U.S. Department of Justice. After these agencies concur in the settlement, the parties will seek congressional approval, as the settlement contains terms that will need to be enacted into federal law and approved by Congress. After federal legislation is enacted, the matter will need to once again return to the New York State Legislature, to adopt final legislation approving and enacting the terms to the extent that state law will need to be amended.

11. The parties anticipate that, even though they have been further along in negotiations than ever before, this process will take another two years to complete. The parties cannot control the New York or United States legislative agendas, nor can they control the speed at which the relevant federal agencies will approve the settlement terms.

12. From 2014 until the present, the parties met at regular intervals with a representative from this Court's mediation program (CAMP). At the conclusion of

4

the conferences, the parties would submit a stay status update, which served to extend the length of the Local Rule 42.1 stipulated withdrawal for periods between 30 to 60 days, as circumstances dictated.

13. On February 7, 2019, the parties discussed this case with Catherine O'Hagan Wolfe, the Clerk of Court. Ms. Wolfe advised us that it was no longer practicable for the Court to manage the case using the CAMP conferences and accompanying stipulations, particularly because the CAMP mediators were not actively involved in the settlement negotiations. The parties were further advised that the Boundary Claim, having been withdrawn pursuant to Local Rule 42.1, was currently in a dormant state. Ms. Wolfe suggested that the parties reinstate the appeal for the purposes of achieving a different kind of withdrawal. This solution would enable the Court to manage the Boundary Claim docket more effectively, while continuing to allow the parties the flexibility to reach a comprehensive settlement to the complex issues facing them.

14. After consultation with the Clerk of the Court, the Tribe, the State, and the County jointly file this motion to reinstate this appeal for the limited purpose of allowing this Court to consider and grant the Tribe's motion to withdraw without prejudice to subsequent reinstatement subject to the conditions outlined below.

15. This Court has the authority, pursuant to FRAP 2, to issue an order with good cause to suspend the rules or order proceedings as it directs, when doing so would enable it to more effectively manage its docket.

16. Consistent with the plan discussed at the February 7, 2019, conference with the Clerk of the Court, the parties will provide the Court with written status reports on the progress of settlement negotiations at six-month intervals, beginning six months from the date that the Court grants this motion. The parties understand that if they fail to file this report, the Court may *sua sponte* dismiss the case with prejudice.

17. Once all legislation is enacted to ratify the settlement, the parties will file a stipulation of dismissal with prejudice with the Court which would allow the mandate to issue.

18. Although the parties remain optimistic, they recognize that, as with any settlement negotiations, there is always a chance that a final and binding agreement will not be achieved. The parties therefore request to condition this withdrawal so that the appeal may be reinstated on the following terms: if any party decides to discontinue from participation in the settlement negotiations at any time, that party is required to provide written notice to all other parties within 30 days after it makes its decision. Once that notice is sent to all parties, any party—including the party that initially sent the notice—may request reinstatement of the

appeal within 30 days after the date of the notice. Upon reinstatement, the appeal would proceed to briefing and argument.

20. Local Rule 42.1 permits this Court to allow reinstatement upon the terms agreed to by the parties herein, and to so-order those agreed-upon terms.

21. For the foregoing reasons the parties respectfully request this Court grant their joint motion.

                                        Respectfully submitted,

                                        /s/Marsha K. Schmidt
                                        Marsha K. Schmidt
                                        Attorney for Appellant

                                        /s/Jonathan D. Hitsous
                                        (attorney for Andrew M. Cuomo)
                                        Attorney for Appellee

                                        /s/Alan R. Peterman
                                        (attorney for Franklin County)
                                        Attorney for Appellee

February 12, 2019

Service on all parties by ECF